IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KAREN A. BAREL, on behalf of herself and all    :
others similarly situated,                               :
                                            :     CIVIL ACTION NO. 06-2372
               v.                       :
                                            :     CLASS ACTION
BANK OF AMERICA                       :

**SURRICK, J.**                                               **JANUARY 16, 2009**

## MEMORANDUM & ORDER

Presently before the Court are the Representative Plaintiff's Motion for Final Approval of Settlement and Certification of Settlement Class (Doc. No. 57) and Representative Plaintiff's Motion for Award of Attorneys' Fees and Reimbursement of Expenses (Doc. No. 58). After conducting a Fairness Hearing on the proposed final settlement and disbursement of attorneys' fees, and considering all documents filed in support the proposed settlement and fees, the Motions will be granted

## I.    BACKGROUND

Plaintiff Karen A. Barel ("Representative Plaintiff") filed a Complaint against Bank of America ("Defendant") on June 5, 2006. She alleges that Defendant violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA"), by obtaining the credit reports of non-customers who were given power-of-attorney status by customers of Defendant. Representative Plaintiff alleges that Defendant obtained these consumer reports without a permissible purpose under the FCRA and that Defendant's conduct was willful.

The parties exchanged discovery and conducted a number of fact and expert depositions.

On May 25, 2007, Defendant filed a motion for summary judgment.  (*See* Doc. No. 34.)  On the

same day, Representative Plaintiff filed a motion for class certification.  (*See* Doc. No. 33.)

While these motions were pending, the parties negotiated a settlement.

On September 22, 2008, a hearing was held after which we entered an Order

preliminarily approving the settlement.  In that Order, we certified a class for settlement

purposes as follows:

> All persons who, during the time period of June 5, 2004 through and inclusive of
> May 10, 2007, were added as attorney-in-fact pursuant to a power of attorney
> authorization (a "POA") to another individual's Bank of America deposit account
> at a time when the POA was not a customer of the Bank, and whose credit report was
> obtained by the Bank in connection was an application to be added as a POA to the
> account.

(Doc. No. 52 ¶ 2.)  We allowed each class member the right to exclude himself or herself from

the settlement class by mailing a request for exclusion to the Settlement Administrator.  (*Id.* at

¶ 8.)  The request of exclusion had to be postmarked no later than thirty days after the mailing of

the Class Notice.  (*Id.*)  We also designated James A. Francis, David A. Searles, and Glen H.

Chulsky as Counsel for the Class ("Class Counsel"), and scheduled the Fairness Hearing for

January 8, 2009.  (*Id.* ¶¶ 4, 12.)

Under the terms of the settlement agreement, Defendant will provide four free months of

"Privacy Assist Premier," a credit report monitoring service with a retail value of $12.99 a

month, to each settlement class member who submits a claim form within 60 days after the date

of this Memorandum and Order.  At the end of the four months, the service will automatically

terminate absent affirmative action from the class member to continue the service.  Defendant

will also that request the credit bureaus remove from the credit report of each class member who

submits a claim form the credit inquiry made by them in connection with the class member's

power-of-attorney application.  In addition, Defendant has agreed not to resume the practice of

obtaining credit reports of power-of-attorney applicants who are not Defendant's customers

absent a change in the law or interpretation of the law which, in the Defendant's sole judgment,

further demonstrates that this practice is permissible.

As of the time of the Fairness Hearing, Class Counsel had provided notice to 27,350 class

members via first class mail.  (Doc. No. 57, Memo. at 2.)  The notice included information

regarding: the pendency of the action; the terms of the proposed settlement; the opportunity to

opt out, object or participate; and the date of the final Fairness Hearing.  (*Id.*)  Class Counsel also

published the same notice in the national edition of *USA Today* on October 29, 2008.

At the Fairness Hearing on January 8, 2008, Class Counsel and counsel for Defendant

expressed their satisfaction with the settlement agreement and their belief that the agreement was

fair, reasonable, and adequate.  Class Counsel advised that as of December 29, 2008,

approximately 139 class members (or about .005%) had opted out of the settlement.  (*See* Doc.

No. 57, Memo. at 12; Doc. No. 57, Ex. A.)  None of the opt-outs attended the hearing.  Class

Counsel further advised that they received no objections to the settlement agreement.  No class

members, objectors or otherwise, attended the hearing.

## II.    FAIRNESS OF THE SETTLEMENT AGREEMENT

Pursuant to Federal Rule of Civil Procedure 23(e), a district court "may approve a

settlement . . . that would bind class members only after a hearing and on finding that the

settlement . . . is fair, adequate, and reasonable."  Fed. R. Civ. P. 23(e)(1)(C).  In assessing

whether the proposed settlement is fair, adequate, and reasonable, we must "'independently and

objectively analyze the evidence and circumstances . . . to determine whether the settlement is in

the best interest of those whose claims will be extinguished.'" *In re Gen. Motors Corp.*, 55 F.3d 768, 785 (3d Cir. 1995) (quoting 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.41, at 11-88 to 11-89 (3d ed. 1992)); *see also id.* (stating that "the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members").  To do this effectively, we must engage in a two-step analysis, examining first whether the settlement class meets the requirements of Rule 23 and second whether the settlement meets the standards of fairness articulated by the Third Circuit in *Girsh v. Jepson*, 521 F.3d 153, 157 (3d Cir. 1975).

### A.     Rule 23 Class Certification

A settlement class must meet the Requirements of Rule 23 before a court can grant final approval of a class action settlement.  *See, e.g.*, *Orloff v. Syndicated Office Sys.*, No. 00-5355, 2004 U.S. Dist. LEXIS 7151, at *6 (E.D. Pa. Apr. 22, 2005).  "Settlement classes must satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, as well as the relevant 23(b) requirements . . . ."  *In re G.M.*, 55 F.3d at 778; *see also Fry v. Hayt, Hayt, & Landau*, 198 F.R.D. 461, 467-69 (E.D. Pa. 2000).  Rule 23(b) requires that the class satisfy one of its three criteria.  *See Kaplan v. Chertoff*, No. 06-5304, 2008 U.S. Dist. LEXIS 5082, at *20 (E.D. Pa. Jan. 24, 2008).

### 1.     *Numerosity*

Rule 23(a)(1) requires that a class be so numerous "that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The Third Circuit has held that while "[n]o minimum number of plaintiffs is required to maintain a suit as a class action . . . generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  Pursuant to our

4

granting of preliminary approval of the settlement, Class Counsel notified 27,350 class members via first class mail.  (*See* Doc. No. 57, Memo at 2.)  Clearly, a class of 27,350 individuals is so numerous as to make joinder of all class members impracticable.  *See* Fed. R. Civ. P. 23(a)(1). Therefore, the numerosity requirement is met.

2.     *Commonality*

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *Stewart*, 275 F.3d at 227 (*citing Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir.1994)).  "[T]he commonality standard of Rule 23(a)(2) is not a high bar:  it does not require identical claims or facts among class members."  *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004).

There are common questions of law and fact here that affect the entire class.  The primary issue to be determined is whether Defendant willfully violated the FCRA by obtaining consumer reports of non-customers.  This question is common to every member of the class, and the answer to this question will apply to every class member.  The commonality requirement is satisfied.

3.     *Typicality*

"The typicality inquiry centers on whether the interests of the named plaintiffs align with the interests of the absent members."  *Stewart*, 275 F.3d at 227.  "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims."  *Id.* (*citing Baby Neal*, 43 F.3d at 58).  Here, Representative Plaintiff challenges the

conduct that Defendant uniformly applied to every other plaintiff in the class.  Representative Plaintiff's interests are identical to the interests of every class member.  The typicality requirement is satisfied.

        4.     *Adequacy of Representation*

Rule 23(a) requires that the representative parties fairly and adequately protect the interests of the class.  A representative plaintiff is adequate if (1) the representative plaintiff's counsel is competent to conduct a class action; and (2) the representative plaintiff's interests are not antagonistic to the class's interests.  *See In re G.M.*, 55 F.3d at 800-01.

A number of courts in this district have found Class Counsel, David Searles, of Donovan Searles, LLC, and James A. Francis and Mark D. Mailman, of Francis & Mailman, PC,  to be competent, experienced and well-qualified to prosecute class actions such as this one.  *See Orloff*, 2004 U.S. Dist. LEXIS 7151, at *4 (holding Francis & Mailman P.C. and Donovan Searles LLC are "competent to prosecute class actions"); *see also Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 112 (E.D. Pa. 2005); *Saunders v. Berks Credit and Collections, Inc.*, No. 00-3477, 2002 WL 1497374, at *8 (E.D. Pa. July 11, 2002); *Oslan v. Collection Bureau of Hudson Valley*, 206 F.R.D. 109, 112 (E.D. Pa. 2002) ("Francis & Mailman P.C. and Donovan Searles LLC, possess sufficient qualifications, skill, and experience in consumer law and class action practice to prosecute this suit to its conclusion.").  Moreover, Class Counsel have done an excellent job in representing the class in the instant litigation.

"A class representative must be part of the same class and possess the same interest and suffer the same injury as class members."  *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 625-26 (1997) (*quoting East Tex. Motor Freight Sys., Inc., v. Rodriguez*, 431 U.S. 395, 403 (1977)

(citation omitted)).  "The adequacy-of-representation requirement 'tends to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'"  *Amchem*, 521 U.S. at 626 n.20 (*quoting Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).  Here, Representative Plaintiff has suffered the same injury as the rest of the class members.  As reflected in the discussion of commonality and typicality, she adequately represents the interests of the class.

Furthermore, Representative Plaintiff appears to have no interests that are antagonistic to the interests of the Class, and there are no actual or apparent conflicts of interest between Representative Plaintiff and the Class.  The representation here by Class Counsel and by the Class Representative has been more than adequate.

5.    *Rule 23(b)*

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Amchem*, 521 U.S. at 614.  Representative Plaintiff seeks certification under the requirements of Rule 23(b)(3).

Rule 23(b)(3) requires that "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b).

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623 (applying the predominance prong to

"settlement only" classes). "*Amchem* rejected the idea that the potential benefits of settlement are relevant to the predominance inquiry." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 282, 314 (3d Cir. 1998). Rather, the predominance inquiry focuses a common course of conduct by which the defendant may have injured class members. *Id.*

In this case, Defendant engaged in a common course of conduct. We agree with Class Counsel's observation that all class members, by definition, were subjected to the same practices. The predominating, indeed the dispositive, issue is whether Defendant willfully violated the FCRA by obtaining consumer reports of non-customers.

"The superiority requirement requires a court to balance, in terms of fairness and efficiency, the class action method of proceeding against alternative available methods of adjudication." *Smith v. Prof'l Billing & Mgmt. Servs., Inc.*, No. 06-4453, 2007 WL 4191749, at *4 (D.N.J. Nov. 21, 2007) (*referencing DalPonte v. Am. Mortgage Express Corp.*, No. 04-2152, 2006 WL 2403982, at *2 (D.N.J. Aug.17, 2006)). Rule 23(b)(3) sets forth four factors that are relevant to the superiority inquiry:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

With these four factors in mind, a number of courts have concluded in similar circumstances that "[a] class action is superior to individual lawsuits by the class members because it provides an efficient alternative to individual claims, and because individual class members are unlikely to bring individual actions given the likelihood that their litigation

expenses would exceed any potential recovery." *Orloff*, 2004 U.S. Dist. LEXIS 7151, at *5

(*referencing Ralston v. Zats*, No. 94-3723, 2000 WL 1781590, at *5 (E.D. Pa. Nov. 7, 2000)

(ruling that class action was the superior method for addressing claims in which "[e]ach plaintiff

allegedly suffered harms, but the possibility of recovery would not be enough to make litigation

worthwhile")); *see also Prof'l Billing*, 2007 WL 4191749, at *4 ("Class certification is superior

where individual claims are small or modest.").  A class action is superior here because it

provides a forum for class members unlikely to bring separate claims.  The claims of the

individual class members here are small.  Since class members are free to opt-out and pursue

their own actions, if they wish, and because managing this class action presents far less difficulty

than managing each individual case, the settlement class meets the requirements of the

superiority in Rule 23(b)(3).

Clearly, this Class meets all the requirements of Rule 23(a) and Rule 23(b)(3).

Therefore, we will certify the Class for the purposes of settlement and assess the fairness of the

settlement.

       **B.**      **Fairness of the Settlement: Analysis of the *Girsh* Factors**

The Third Circuit requires district courts to weigh and analyze nine factors, known as the

*Girsh* factors, when they are making a fairness determination.  *See Girsh*, 521 F.3d at 157.  The

factors are:  (1) the complexity, expense, and likely duration of litigation; (2) the reaction of the

class to the settlement; (3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability; (5) the risks of establishing damages; (7) the ability of the

defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement

fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement

fund in light of all the attendant risks of litigation. *Id.* at 157. We will consider each factor in turn.

       1.     *Complexity, Expense, and Likely Duration of Litigation*

The first factor "captures 'the probable costs, in both time and money, of continued litigation.'" *In re Cendant Corp. Litig.*, 264 F.3d at 233 (*quoting In re G.M.*, 55 F.3d at 812). Defendant's Motion for Summary Judgment (Doc. No. 34) and Representative Plaintiff's Opposition (Doc. No. 48) are currently pending before us. As the parties' arguments in their briefing make clear, Representative Plaintiff's claim raises complex issues regarding the meaning and scope of willfulness under the FCRA. *See generally Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) (discussing willfulness under FCRA). The issues raised in the litigation are novel and if the case were litigated through trial, the losing side would certainly appeal. This consideration, combined with the complexity of the issues raised and the large expenditure of time and resources that pretrial motions and trial itself would require, leads us to conclude that this factor favors approval of the settlement.

       2.     *The Reaction of the Class to the Settlement*

Class Counsel mailed 27,350 notices to class members advising them of the terms of the settlement and their right to opt out of the Class. As of December 29, 2008, approximately 139 class members (or about .005%) had opted out of the settlement. No class members have objected to the fairness or adequacy of the settlement. These facts support approval of the settlement. *See Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (holding that "only" 29 objections in 281 member class – or 10% – "strongly favors settlement"); *In re Prudential*, 148 F.3d at 318 (affirming conclusion of district court that class reaction was

favorable when 19,000 class members opted out of class of eight million and 300 objected).

      3.     *Stage of the Proceedings and Amount of Discovery Completed*

      The third factor "'captures the degree of case development that class counsel have accomplished prior to settlement.  Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.'"  *In re Cendant Corp. Litig.*, 264 F.3d at 235 (*quoting In re G.M.*, 55 F.3d at 813).  Here, the parties arrived at the settlement after they had engaged in extensive discovery.  Presently outstanding are Representative Plaintiff's Motion for Class Certification and Defendant's Motion for Summary Judgment.  These motions have been fully briefed.  Thus, the settlement occurred at a stage where "'the parties certainly [had] a clear view of the strengths and weaknesses[]' of their cases."  *Orloff,* 2004 U.S. Dist. LEXIS 7151, at *17 (*quoting Bonett v. Educ. Debt Servs.*, No. 01-6528, 2003 U.S. Dist. LEXIS 9757, at *6 (E.D. Pa. May 9, 2003)) (brackets in original).  This factor favors approval.

      4.     *Risks of Establishing Liability*

      To prevail at trial, the Class would have to prove that Defendants willfully violated the FCRA by accessing class members' credit reports.  Given that Representative Plaintiff's claim raises novel questions under the FCRA, it is difficult to ascertain the likelihood that Representative Plaintiff will be able to establish liability.  There is, at the very least, a reasonable risk that a fact-finder could determine that Defendant's conduct was not willful.  *See, e.g.*, *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007) ("Willfulness under the FCRA is generally a question of fact for the jury." (*citing Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995))).  The results of a trial here are by no means clear.

11

Accordingly, we find that this factor favors approval of the settlement.

     5.    *Risks of Establishing Damages*

The FCRA allows plaintiffs to recover "any actual damages sustained . . . or damages of not less than $ 100 and not more than $ 1,000." 15 U.S.C. § 1681n. Here, the amount of statutory damages could range from $2,735,00 to $27,350,000 (based on 27,350 class members filing a claim). The parties anticipate that even if Representative Plaintiff were to successfully establish liability, determining damages would be difficult. In addition to conferring an economic benefit on the Class in the form of the credit monitoring service, Defendant will have the credit inquiries at issue removed from the credit reports of class members and will cease the practice of obtaining credit reports for power-of-attorney applicants. We find that this factor favors approval of the settlement.

     6.    *Risks of Maintaining the Class Action Through Trial*

Class certification may be amended or reconsidered at any time before judgment. *See* Fed. R. Civ. P. 23(c)(1)(C) ("[A]n order [granting class certification] under Rule 23(c)(1) may be altered or amended before final judgment."); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537 ("A district court retains the authority to decertify or modify a class at any time during the litigation if it proves to be unmanageable."). There is always some risk that a class certified for settlement purposes could create intractable management problems. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537. Defendant will certainly oppose certification of the Class and could also seek to decertify the certified class prior to trial. *Orloff*, 2004 U.S. Dist. LEXIS 7151, at *20. This factor is also in favor of approval.

     7.    *Defendant's Inability to Withstand a Greater Judgment*

The parties urge us to consider this factor as "neutral" because "[t]here is no evidence in the record that [Defendant] is unable to withstand a greater judgment." (Doc. No. 57, Memo. at 16.) While there may be no evidence regarding Defendant's inability to withstand a greater judgment, we note that Defendant is one of the largest banks in the world and could likely withstand a greater judgment, even in these economic times. Thus, this factor weighs against approval. *See generally In re Cendant Corp. Litig.*, 264 F.3d at 240-41 (affirming district court's approval of settlement notwithstanding the fact that the district court erred in treating defendant's ability to withstand a greater judgment as neutral when defendant could, in fact, withstand a greater judgment); *McCoy v. Health Net Inc.*, 569 F. Supp. 2d 448, 462-63 (D.N.J. 2008) ("As this Court has noted, 'many settlements have been approved where a settling defendant has had the ability to pay greater amounts.'" (*quoting In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-0085, 2005 U.S. Dist. LEXIS 27013, at *24 (D.N.J. Nov. 9, 2005))).

8.  *The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and in Light of All Attendant Risks of Litigation*

The final two *Girsh* factors "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 538 ("The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial."). Here, statutory damages range from approximately $2.7 million to $27 million. (Doc. No. 57, Memo. at 15.) The proposed settlement confers $51.96 of value on each class member, which amounts to $1,421,106 when the Class is aggregated, or 52% of the low end of the damages range and 5.2% of the high end of the damages range. This percentage of recovery is within the range of reasonable recovery for class actions. *See In re Ikon Office Solutions, Inc.*,

13

194 F.R.D. 166, 183 n.15 (E.D. Pa. 2000) (approving settlement that ranged from 5.2% to 24% of potential recovery); *In re Greenwich Pharm. Sec. Litig.*, No. 92-3071, 1995 U.S. Dist. LEXIS 5717, at *13-14 (E.D. Pa. Apr. 26, 1995) (approving settlement amount that ranged from 4.4% to 42% of potential recovery); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (quoting study by Professor John C. Coffee, Jr., Adolf A. Berle Professor of Law at Columbia University Law School, which determined that since 1995, class action settlements have typically recovered "between 5.5% and 6.2% of the class members' estimated losses"). The parties acknowledge that this case poses novel questions about the scope of permissible activity under the FCRA.  It is not clear which party is likely to prevail at trial, let alone the amount of damages the class would receive if Plaintiff prevails.  As the court in *Greenwich* noted:

> plaintiffs' most optimal estimate must be tempered by defendants' repeated and vigorous claim of no damages. When the probability of success at trial is factored into the equation, the settlement is obviously "within the range of reasonableness." It represents a "very substantial portion of the likely recovery in this case, and is unquestionably better than another 'possibility' -- little or no recovery at all."

1995 U.S. Dist. LEXIS 5717, at *14 (citations omitted).  Accordingly, these factors weigh in favor of approval.

 9.     *Conclusion*

 Eight of the nine *Girsh* factors favor settlement.  The one factor that weighs against settlement – Defendant's ability to withstand a greater judgment – does not outweigh the combination of the other factors.  *See In re Cendant Corp. Litig.*, 264 F.3d at 240-41; *McCoy*, 569 F. Supp. 2d at 462-63.  Taking all the *Girsh* factors together, we conclude that the proposed settlement is fair, adequate, and reasonable.  The proposed settlement will be approved.

14

## III.   AWARD TO CLASS REPRESENTATIVE, ATTORNEYS' FEES, AND COSTS

### A.   Award to Class Representative

Representative Plaintiff seeks approval of a $10,000 individual settlement award for herself.  This award is to be paid by Defendant.  Although $10,000 is on the higher end of awards to named plaintiffs in these cases, *see, e.g.*, *Curiale v. Lenox Group, Inc.*, No. 07-1432, 2008 U.S. Dist. LEXIS 92851, at *29-30 (E.D. Pa. Nov. 14, 2008) (collecting Fair and Accurate Credit Transaction Act cases and noting awards to named plaintiffs, which ranged from $2,500 to $3,000), it is within the range of awards that courts have determined to be reasonable, *see, e.g.*, *Razilov v. Nationwide Mut. Ins. Co.*, No. 201-1466, 2006 U.S. Dist. LEXIS 82723 (D. Or. Nov. 13, 2006) (approving award of $10,000 to named plaintiff in FRCA case).  Based upon the time and effort expended by Representative Plaintiff in bringing this action and obtaining benefits for the Class, we are satisfied that the award is reasonable.

### B.   Attorneys' Fees and Costs

Class Counsel seek fees and costs in the total amount of $390,000.00.  Under the settlement agreement, the fees and costs will be paid by Defendant.  In order to assess the fairness and reasonableness of the fee request, we conduct a lodestar analysis, and then cross check our results with a percentage of recovery analysis.  *See Perry*, 229 F.R.D. at 120 (reasoning that a lodestar analysis was appropriate for FCRA litigation before the court because plaintiffs did not collect a fund of money; rather, they had to fill out a claim form to secure two free credit reports and two free credit scores).[1]  Ultimately, we have discretion over the proper

---

[1] The court in *Perry* was confronted with a settlement agreement very similar to the one at issue here.  *See Perry*, 229 F.R.D. at 120.  In determining that the lodestar analysis was the proper mode of analysis, the court noted that the Supreme Court has prohibited the use of a

amount of attorneys' fees.  *In re Ikon Office Solutions, Inc.*, 194 F.R.D. at 193; *Perry*, 229 F.R.D. at 119 ("Neither method is mandatory [in an FCRA case], leaving the district court with a wide range of discretion when selecting which method to employ.").

      1.    *Lodestar Analysis*

"The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the geographic area, the nature of the services provided, and the experience of the attorneys."  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 305 (citing *In re Prudential*, 148 F.3d at 333).  The multiplier takes "into account the contingent nature and risk of the litigation, the results obtained and the quality of service rendered by counsel."  *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 434 (E.D. Pa. 2001); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 305-06 ("The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work.").

The fees and expenses for Class Counsel Francis & Mailman P.C. total  $172,858.78. Attorney James A. Francis logged 303.5 hours on this case and seeks $390 per hour for his services, for a total of $ 118,365.00.[2]  Attorney Mark D. Mailman logged 28 hours on this case

---

contingency multiplier in statutory fee-shifting cases.  *Id.* at 122-23 (*citing City of Burlington v. Dague*, 505 U.S. 557, (1992)).  However, the court determined that FCRA cases "fail[] to fall within the statutory fee-shifting realm that would make application of *Dague* straightforward and bar a risk-based contingency multiplier." *Id.* at 122-23.  Rather, FCRA cases such as the one before the court in *Perry* and the one before us here are hybrid cases in which the use of a lodestar analysis is permissible and preferable.  *See id.* at 123 (*citing Ciccarone v. B.J. Marchese, Inc.*, No. 03-1660, 2004 U.S. Dist. LEXIS 25747, at *16 (E.D. Pa. Dec. 22, 2004); *Brytus v. Spang & Co.*, 203 F.3d 238, 243-44 (3d Cir. 2000)).

    [2] In making these calculations, we rely on summaries of billing records provided by Class Counsel and filed in support of Representative Plaintiff's fee application.  *See In re Rite Aid*

and seeks $390 per hour for his services, for a total of $10,920.00.  Attorney John Soumilas

logged 72.1 hours on this case and seeks $315 per hour for his services, for a total of $22,711.50.

(*Id.*)  Paralegal Alicia Bungy logged 34.2 hours on this case and seeks $135 per hour for her

services, for a total of $4,617.00.  In addition to fees for hourly work, Class counsel seeks

$16,245.28 in expenses.

Attorney Glen Chulsky logged 89.5 hours on this case and seeks $375 per hour for his

services, for a total of $33,562.50.

The fees and expenses for counsel Donovan Searles LLC total $83,103.97.  Attorney

David A. Searles logged 141.8 hours and seeks $550 per hour for his services, for a total of

$77,990.00.  Attorney Andre M. Milz logged 9.1 hours on this case and seeks $225 per hour for

his services, for a total of $2,047.50.  Attorney Christian Koerner logged 3.5 hours on this case

and seeks $145 per hour for his services, for a total of $507.50.  Donovan and Searles LLC also

incurred $2,558.97 in expenses.

In total, the fees and expenses of the various Class Counsel result in a lodestar calculation

of $289,525.25.  Applying a multiplier of 1.35, the total feeds and expenses are $390,000.00.  A

multiplier of 1.35 is well within the bounds of what the Third Circuit has deemed fair and

reasonable.  *See, e.g.*, *In re Prudential*, 148 F.3d at 341 (stating that lodestar "[m]ultiples ranging

from one to four are frequently awarded in common fund cases where the lodestar method is

applied" (internal quotations and citation omitted)).  Indeed, courts in this district have approved

of a multiplier of 1.5 in similar situations.  *See Perry*, 229 F.R.D. at 123.

2.      *Percentage of Recovery Cross Check*

---

*Corp. Sec. Litig.*, 396 F.3d at 306-07.

District courts in this Circuit must consider seven factors when assessing the reasonableness of a fee under the percentage-of-recovery method:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2001) (citing *In re Prudential*, 148 F.3d at 336-40).  Several of these factors are similar to the *Girsh* factors that we considered above.  *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 301 n.9.

The *Gunter* factors raise no concerns that were not considered in our analysis of the *Girsh* factors.  Importantly, there were no objections to the settlement by class members.  In addition, Class Counsel handled this matter with skill and efficiency.  Moreover, the fee sought by Class Counsel amounts to approximately 23% of the value conferred upon the Class, which is reasonable in the context of class action litigation.  *See Perry*, 229 F.R.D. at 123 (finding award totaling 14.9% of the class's recovery to be reasonable).  A review of cases from this District and Pennsylvania state courts reveals a range of fees as a percentage of recovery ranging from 5% to 40%.  A percentage of recovery of 23% is consistent with our lodestar analysis.  We are satisfied that the fees and costs negotiated by the parties and which will be paid by Defendant are fair and reasonable under the circumstances.

For the reasons above, the Motion for Final Approval of Class Action Settlement and Representative Plaintiff's Motion for Award of Attorneys' Fees and Reimbursement of Expenses will be granted.

An appropriate Order follows.

18

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| KAREN A. BAREL, on behalf of herself | : | CIVIL ACTION |
| and all others similarly situated | : | |
| | : | |
| v. | : | NO. 06-2372 |
| | : | |
| BANK OF AMERICA | : | |


## FINAL JUDGMENT AND ORDER OF DISMISSAL

This matter, having come before the Court on Representative Plaintiff's Motion for Final

Approval of Settlement and Certification of Settlement Class (Doc. No. 57) and the Motion For

the Award of Attorneys' Fees and Reimbursement of Expenses (Doc. No. 58), the Court having

considered all papers filed and arguments made with respect to the settlement, and having

provisionally certified, by Order entered September 23, 2008, a settlement class, and the Court,

being fully advised in the premises, finds that:

1.      This action satisfies the applicable prerequisites for class action treatment under

Federal Rules of Civil Procedure 23(a) and (b).  The class as defined in the Settlement

Agreement (the "Class") is so numerous that joinder of all members is not practicable, there are

questions of law and fact common to the Class, the claims of the Representative Plaintiff are

typical of the claims of the Class, and the Representative Plaintiff will fairly and adequately

protect the interests of the Class.  Questions of law and fact common to the members of the Class

predominate over any questions affecting only individual members, and a class action is superior

to other available methods for the fair and efficient adjudication of the controversy.

2.      Notice to the Class required by Rule 23(d) of the Federal Rules of Civil Procedure has been provided in accordance with the Court's Preliminary Approval Order, entered September 23, 2008, and such Notice by mail and publication has been given in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances; and satisfies Rule 23(e) and due process.

3.      Defendant has timely filed notification of this settlement with the appropriate federal officials pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1715. The Court has reviewed such notification and accompanying materials and finds that the Defendant's notification complies fully with the applicable requirements of CAFA.

4.      The Settlement Agreement was arrived at as a result of arms-length negotiations conducted in good faith by counsel for the parties, and is supported by the class representative.

5.      The settlement as set forth in the Settlement Agreement is fair, reasonable and adequate to the members of the Class in light of the complexity, expense and duration of litigation and the risks involved in establishing liability and damages, and in maintaining the class action through trial and appeal.

6.      The relief provided under the settlement constitutes fair value given in exchange for the releases of the Settled Claims against the Released Parties, as those terms are defined below.

7.      The persons listed on Exhibit A to Representative Plaintiff's Motion for Final Approval of Settlement and Certification of Settlement Class have validly excluded themselves from the Class in accordance with the provisions of the Preliminary Approval Order.

8.    The parties and each class member have irrevocably submitted to the exclusive Jurisdiction of this Court for any suit, action, proceeding, or dispute arising out of the Settlement Agreement.

9.    It is in the best interests of the parties and the class members and consistent with principles of judicial economy that any dispute between any class member (including any dispute as to whether any person is a class member) and any released Party that in any way relates to the applicability or scope of the Settlement Agreement or the Final Judgment and Order of Dismissal should be presented exclusively to this Court for resolution by this Court.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

A.    This action is finally certified as a class action against Bank of America on behalf of a Class defined as follows:

> All persons who, during the time period of June 5, 2004 through and inclusive of May 10, 2007, were added as attorney-in-fact pursuant to a power of attorney authorization (a "POA") to another individual's Bank of America deposit account at a time when the POA was not a customer of the Bank, and whose credit report was obtained by the Bank in connection with an application to be added as a POA to the account.

B.    The Settlement Agreement submitted by the parties is finally approved pursuant to Rule 23(e) of the Federal Rules of Civil Procedure as fair, reasonable and adequate and in the best interests of the Class and the parties are directed to consummate the Agreement in accordance with its terms.

C.    This action is hereby DISMISSED on the merits, with prejudice and without costs.

D.    For purposes of this Final Judgment and Order of Dismissal:

(I)     "Settled Claims" means any and all claims that were asserted or that could have been asserted in the action arising from Bank of America's alleged improper or impermissible access of credit reports.

(II)    "Released Parties" means Bank of America, and its respective parents, affiliates, subsidiaries, divisions, predecessors, successors, Representatives, assignees, present and former officers, directors, Employees, shareholders, representatives, insurers, attorneys and Agents.

E.     The Settled Claims are hereby compromised, settled, released, discharged, and dismissed on the merits and with prejudice by virtue of the proceedings herein and this Final Judgment and Order of Dismissal.

F.     Class members and their heirs, executors, administrators, successors, and assigns are hereby permanently barred and enjoined from instituting, commencing, prosecuting or continuing to prosecute, either directly or indirectly, any Settled Claim against any of the Released Parties in any forum.

G.     Without affecting the finality of this judgment, the Court hereby reserves and retains jurisdiction over this settlement, including the administration and consummation of the settlement.  In addition, without affecting the finality of this Judgment, the Court retains exclusive jurisdiction over Bank of America and each member of the Class for any suit, action, proceeding or dispute arising out of or relating to this Order, the Settlement Agreement or the applicability of the Settlement Agreement.  Without limiting the generality of the foregoing, any dispute concerning the Settlement Agreement, including, but not limited to, any suit, action, arbitration or other proceeding by a class member in which the provisions of the Settlement Agreement are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, shall constitute a suit, action or proceeding arising out of or

4

relating to this Order.  Solely for purposes of such suit, action, or proceeding, to the fullest extent possible under applicable law, the parties hereto and all class members are hereby deemed to have irrevocably waived and agreed not to assert, by way of motion, as a defense or otherwise any claim or objection that they are not subject to the jurisdiction of this Court, or that this Court is, in any way, an improper venue or an inconvenient forum.

       H.     Upon consideration of Counsel's request for an award of attorneys' fees and for reimbursement of expenses, counsel are awarded reasonable fees and expenses in the amount of $390,000.00.

       I.     Upon consideration of the application for a class representative incentive award to the Representative Plaintiff, Karen A. Barel, is awarded the sum of $10,000.00 in consideration of the valuable service she performed for and on behalf of the Class.

The Court finds, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, that there is no just reason for delay, and directs the Clerk to enter final judgment.


BY THE COURT:


_____

R. Barclay Surrick, J.


Dated:   __January 16, 2009___